BETZNER et al., Appellants,

v.

NAVISTAR INTERNATIONAL TRANSPORTATION
CORPORATION, Appellee, et al.

[Cite as *Betzner v. Navistar Internatl. Transp. Corp.* (1991), 77 Ohio App.3d 611.]

Court of Appeals of Ohio,
Clark County.

No. CA–2766.

Decided Oct. 9, 1991.

612

*Rupert E. Ruppert,* for appellants.

*Linda Woeber,* for appellee.

WOLFF, Judge.

Timothy J. Betzner appeals from the summary judgment rendered in favor of Navistar International Transportation Corp. ("Navistar"). Betzner suffered a severe electrical shock while employed by B.G. Danis Industries ("Danis") as part of Danis' paving crew. Danis had been hired by Navistar to pave an access road to Navistar's plant in Springfield, Ohio. Betzner was employed as a cement finisher. This position required him to use a straight edge aluminum rod with a "T" on the end to check the surface of the wet cement for imperfections in the surface. The length of the "check rod" could vary depending on how many sections were added to the handle. At the time of the injury, Betzner was checking a twelve-foot portion of the cement surface and had attached approximately twenty feet of handle to the base of the check rod.

Ohio Edison Company ("Ohio Edison") maintained high voltage electrical power lines at a height of twenty-two to twenty-three and one-half feet immediately above the area where Betzner was checking cement. The placement and maintenance of the wires was in full compliance with national electrical safety standards. According to Betzner, he was injured when the handle of his uninsulated metal check rod came into contact with, or into close proximity to, the electrical wires.

Betzner filed a complaint against Ohio Edison and Navistar, claiming that Ohio Edison was negligent in its placement and maintenance of the electrical wires and that Navistar failed to maintain a safe workplace at its plant. Betzner also alleged that both defendants were aware of the dangerous condition created by the overhead electrical wires and neither warned him of the inherent danger of working in the foreseeable zone of danger, nor took measures to remedy the unsafe condition of the workplace.

Ohio Edison and Navistar moved for summary judgment. Since Ohio Edison maintained its power lines in compliance with the National Electric Safety Code, the trial court held that, as a matter of law, it did not breach a duty owed to Betzner. Similarly, the court found that, as a matter of law, Navistar owed no duty to Betzner. It held that Betzner knew of the power lines, that the wires were active with electricity, and that his injuries were caused solely by his own negligence.

Betzner appeals only from the summary judgment rendered in Navistar's favor, advancing two assignments of error for our review.

First Assignment of Error:

"The trial court erred as a matter of law in granting summary judgment to defendant, Navistar."

The substance of this assignment is that the trial court erred in its finding that Navistar, as a matter of law, neither owed a duty nor breached a duty owed to Betzner.

The disposition of this assignment hinges on whether Navistar owed any duty to Betzner. If it did not, there was no actionable negligence. For the following reasons, we conclude that on the state of the evidence in this case Navistar owed no duty to Betzner.

 The duty, if any, that an owner or occupier of premises owes to the employee of an independent contractor engaged by the owner/occupier arises in two ways: under Ohio common law and under R.C. 4101.11. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167. R.C. 4101.11, the "frequenter statute," provides:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein *and for frequenters thereof,* shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (Emphasis added.)

The duty owed to frequenters under R.C. 4101.11 is a codification of the common-law duty owed by an owner/occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that a warning be given of dangers of which the owner/occupier has knowledge. *Eicher, supra,* 32 Ohio St.3d at 249, 512 N.E.2d at 1167. Notwithstanding this rule, the primary responsibility for protecting the employees of an independent contractor lies with the independent contractor, not with the premises' owner/occupier. *Id.* at 250, 512 N.E.2d at 1168. Therefore, one who engages the services of an independent contractor ordinarily owes no duty of protection to the employees of the independent contractor when the independent contractor or his employee proceeds with knowledge and an appreciation of the danger the work entails. *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph two of the syllabus. Thus, while an owner/occupier of premises generally owes no duty *to protect* an employee of an independent contractor, he does owe a duty to provide safe premises, as well as a duty to warn of abnormally dangerous conditions of which the employee is unaware. *Eicher, supra,* 32 Ohio St.3d at 249, 512 N.E.2d at 1167.

Betzner admitted in his deposition that, in his capacity as a cement finisher, he was familiar with working under power lines. He acknowledged that he

was fully aware of the electrical wires which were strung over the area in which he was checking the cement. He admitted that the wires made an audible "humming" noise which alerted him to the fact that the wires were active with electricity. He also knew that he would be electrocuted if he touched the wires with the uninsulated metal check rod.

However, he argues that these facts, which are undisputed, failed to establish that he knew of and appreciated all the dangers presented by the electrical wires. Betzner claims that, although he knew of the risk of electrocution associated with actual contact with the wires, he was nevertheless unaware that the electrical wires were uninsulated and that electricity had the capacity to arc between six and fourteen inches from its source toward a conductive object close to it. He thus appears to contend that the uninsulated condition of the wires and the arcing properties of electricity posed a separate and distinct danger from the danger of electrocution from actual contact with the wires, with which danger he was familiar. Thus, he contends that Navistar had a duty to warn him of this separate danger.

The duty to warn arises only when there is an unknown hazard. In his deposition, Betzner unequivocally admitted that he was aware of the overhead electrical wires, and that he knew of the hazard posed by actual contact with the electrical wires. When he made this statement, he did not distinguish between his awareness of hazards posed by contact with insulated electrical wires and hazards posed by contact with uninsulated electrical wires.

The fact that Navistar did not warn Betzner that the wires were uninsulated is of no consequence. An owner of premises can reasonably expect that a frequenter who appreciates a known hazard is not going to subject himself to appreciable harm by acting in a manner by which he exposes himself to injury from the hazard, even though serious injury is not certain to result. See *Angel v. United States* (S.D.Ohio 1986), 650 F.Supp. 434, 438. In this case, by bringing his metal check rod into close proximity to the electrical wires, Betzner subjected himself to a substantial risk of some injury. Betzner testified in his deposition that he had seen workers touch electrical wires without suffering injury beyond mild shock. Presumably, in these instances, the wires were insulated. If the wires herein had been insulated, Betzner would still have been shocked, although the severity of the injury he would have suffered would have been less than that resulting from contact with uninsulated wires. However, whether or not the wires were insulated, contact with the wires would have caused Betzner to sustain an injury.

Betzner knew of the danger posed by the electrical wires, although he was perhaps not fully aware of the potential severity of the injury he faced if he

allowed his metal check rod to contact uninsulated wires. An appreciation of the potential severity of an injury from a known hazard is irrelevant to the determination of whether a landowner has a duty to warn a frequenter of a hazard. What is relevant to that determination is whether Betzner was aware of the hazard. By his own testimony, Betzner fully appreciated the hazard posed by the overhead wires.

Betzner was also unaware of the arcing capacity of electricity and claims this posed a discrete hazard that was distinct from that posed by contact with the electrical wires. Thus, he maintains that Navistar had a duty to warn him of this hazard. We find it unnecessary to address whether electrical arcing posed a discrete hazard which created a duty to warn. The depositions of Betzner and his Danis supervisor, Carl McIntosh, established only that it was possible for electricity to arc. However, there was no evidence offered as to the *probability* that electricity arced in this case. The mere possibility that an event occurred, without more, is insufficient to withstand a motion for summary judgment, even when the evidence is construed in the nonmovant's favor.

Assuming, *arguendo*, that there was a duty to warn of electrical arcing, the evidence did not establish that Betzner's injuries were caused by an arc of electricity. The record is completely devoid of any evidence which would suggest that Betzner's injury was caused by an arc of electricity rather than by actual contact with the wires. Since there was no duty to warn as to the electrical wires, and there was no evidence that electrical arcing caused Betzner's injuries, we conclude that the trial court properly determined, as a matter of law, that Navistar neither owed a duty, nor, perforce, breached a duty owed to Betzner.

Betzner argues that Navistar is liable to him for his injuries notwithstanding *Eicher*. He relies on *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, which examined the circumstances under which an owner or occupier of premises can be held liable for injuries sustained by an employee of a contractor. The rule is as follows:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." *Id.* at syllabus.

*Hirschbach* thus stands for the proposition that under certain circumstances, an otherwise dutiless owner/occupier of premises owes a duty to a general contractor's employee to eliminate hazards. In *Hirschbach*, Cincinnati Gas & Electric Company ("CG & E") engaged an independent contractor to

repair CG & E's electrical tower. Hirschbach, an employee of the independent contractor, died when the tower on which he was working collapsed under tension exerted by CG & E's winchline. Prior to Hirschbach's death, employees of the independent contractor had requested permission from CG & E to move the winch tractor a safe distance from the tower. The request was denied. In reversing a summary judgment entered in CG & E's favor, the Ohio Supreme Court held that:

"[A] jury could reasonably conclude that CG & E had sole control over the safety features necessary to eliminate the hazard. By denying the * * * request to reposition the winch tractor * * * CG & E actually participated in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed." (Footnote omitted.) *Id.*, 6 Ohio St.3d at 208, 6 OBR at 261, 452 N.E.2d at 329.

*Hirschbach* has been reviewed in the more recent Ohio Supreme Court case of *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189. Cafferkey reaffirmed the *Hirschbach* "actual participation" test, holding that:

"A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." *Id.* at syllabus.

*Cafferkey* then held that the test for "actual participation" focused on whether the owner of the premises or the general contractor gave or denied permission for the critical acts that led to injuries. *Cafferkey, supra,* 21 Ohio St.3d at 112, 21 OBR at 417, 488 N.E.2d at 191. Without such a showing, the general contractor/owner could not be held liable because there was no "actual participation" in the job operation.

In this case, Betzner claims that by supervising the job site and directing how a portion of the job was to be completed, Navistar, through its supervising employees, actually participated in the job operation such that *Hirschbach* applies. We disagree. *Cafferkey* clearly holds that mere supervision of a job site is insufficient to meet the *Hirschbach* test, and that the owner/occupier must be affirmatively involved in the critical acts leading up to the injury. In this case, the record is completely devoid of any evidence that Navistar actually participated in the manner in which Betzner operated the check rod.

We thus conclude that, as a matter of law, Navistar owed no duty to Betzner under *Hirschbach*.

The first assignment is overruled.

Second Assignment of Error:

"The granting of summary judgment is improper where there are genuine issues of material fact that remain to be litigated."

In addition to finding that Navistar owed no duty to Betzner, the trial court also found that:

"[Betzner] was aware of the existence of the power lines near the project. He was aware of the current running through the lines. He was using a conductive handle on his equipment when a non-conductive handle was avilable [*sic*] and required under the circumstances. The hazard was obvious and known to the plaintiff. The plaintiff assumed the risk in raising the rod in his hand 22 feet to a point in close proximity or in contact with the overhead wires.

"It is apparent that the plaintiff's own negligence or perhaps combined negligence with his employer, Danis, was the sole and proximate cause of his injury."

Betzner argues that a genuine issue of material fact exists whether he was negligent and whether his negligence, if any, was greater than Navistar's. We agree that the trial court erroneously found Betzner negligent as a matter of law. However, we also find this to be harmless error. Betzner's alleged negligence has no bearing on the disposition of this appeal given the trial court's correct determination that Navistar owed no duty to Betzner. See discussion of first assignment.

The second assignment is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.