TAYLOR, Appellant,

v.

B.P. EXPLORATION AND OIL, INC. et al., Appellees.*

[Cite as *Taylor v. B.P. Exploration & Oil, Inc.* (1994), 96 Ohio App.3d 318.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–253.

Decided Aug. 5, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in 71 Ohio St.3d 1446, 644 N.E.2d 408.

*Stephan M. Gabalac,* for appellant.

*William D. Bonezzi, Martin J. Fallon* and *Douglas G. Leak,* for appellees.

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendants-appellees B.P. Exploration and Oil, Inc. and B.P. America, Inc., and dismissed plaintiff-appellant Alonzo Taylor's complaint for damages for personal injuries he sustained in the course of his employment with C & W Tank Cleaning, Inc.

Appellant has appealed setting forth the following assignment of error:

"The trial court erred as a matter of law in sustaining the Appellee's Motion for Summary Judgment and dismissing the Appellant's Complaint."

The facts that are relevant to the issues raised on appeal are as follows. In May 1990, appellant began working as a trainee for C & W Tank Cleaning, Inc., which at the time had a contract with appellees for tank cleaning services. Under the contract C & W was to provide general vacuum truck and labor services, which included all the necessary equipment and tools, the safety equipment, and training for its own employees. On July 15, 1990, appellant was working with Robert Batchman, also a C & W employee, at appellees' refinery in Oregon, Ohio, when a foreman for appellees requested that Batchman transfer spent caustic to a slop tank. As a trainee, appellant watched while Batchman transferred the caustic from a holding truck to the slop tank. While Batchman was making the second and final transfer, a hose came loose and sprayed the liquid on appellant.

On July 13, 1992, appellant filed a complaint against appellees and C & W[1] in which he alleged that he had sustained serious and permanent injuries while a frequenter on appellees' premises. In the first count of his complaint appellant alleged that appellees were negligent in failing to furnish a safe workplace, failing

---

1. The issues in this appeal concern only appellant's claims against B.P. Exploration and Oil, Inc. and B.P. America, Inc.

to warn him of unsafe and defective conditions on the premises, failing to take precautions for his protection and failing to provide him with appropriate and adequate protection and safety equipment.

On February 2, 1993, appellees filed a motion for summary judgment in which they argued that they did not owe any duty to appellant, who was a frequenter, working for an independent contractor engaged in inherently dangerous work, and therefore they were entitled to judgment as a matter of law.

Appellant argued in response that appellees owed him a duty of care because they participated in the job operation in which he was injured, retained authority for ensuring safety at the work site, violated OSHA and ANSI regulations and were in possession and control of the premises where the injury took place.

The evidence that was before the court on summary judgment included the depositions of Robert Batchman; James Parker, a Vice President of C & W; Stephen Otey, the director of plant protection employed by appellees; and appellant.

Batchman testified that, although he could not recall much of the events of July 15, 1990, he did remember that he was called to the "separator" by appellees' shift foreman, Ken Huntley, who then told him to make the transfer. He stated that that was usually where he went to find out what needed to be done. He could not recall if he was told what liquid he was dealing with, although he indicated that he imagined he would have been told and that as far as he knew it was a caustic tank. He described what he was wearing that day as a long sleeve shirt, a hardhat and safety glasses and stated that appellant was dressed the same. He acknowledged that he had been trained in dealing with hazardous material and that he understood that he had on the appropriate safety gear. He did recall that, at the time, rubber rain suits and face shields were probably available at the employee trailer.

Parker testified that he is in charge of overseeing company activities and explained that appellees chose C & W because of its expertise and that they did not tell C & W how to do that which C & W was hired to do. Parker explained that for particular jobs that C & W performs there are material safety data sheets (MSDS) which are to be provided by appellees. The MSDS determines the protective equipment to be worn for the material being handled and every employee who works on a particular job is responsible for reviewing the MSDS for each product. The employees are taught that, even for day-to-day operations, they are to ask for the data sheets. Parker explained further that, while the C & W foreman will usually ask for the data sheet and determine the appropriate equipment, both appellant and Batchman were trained to know what protective equipment was required and they were negligent in not wearing the proper equipment at the time of the accident. He indicated that employees are taught

that spent caustic is dangerous and that when they handle it they are to wear protective equipment, and that chemical goggles, rains suits and face shields were available on July 15, 1990. Parker stated that when he asked Batchman why he had not been wearing personal protective equipment, he replied that it was late in the day and he wanted to "get out." As to job assignments, Parker stated that he was not exactly sure of appellees' procedure but indicated that appellees' foreman usually calls a C & W foreman when they need to have a job performed. He stated that there was not a C & W foreman on site that day but one was on call. He stated that if a foreman is not there it is not unusual for appellees' foreman to deal directly with C & W workers. On that day Batchman was the senior C & W employee on the site.

Otey testified that he had reviewed reports of the accident prepared by C & W and James Parker. He stated that the recommended protective equipment for caustic material is chemical goggles, face shields, rain suits and rubber boots for skin protection. Otey testified that, since C & W maintains the equipment trailer as part of the contract, he did not know whether that equipment was there.

Appellant Alonzo Taylor testified in his deposition that he was hired by C & W as a general laborer for cleanup and received no instruction on safety policies. He stated that he was given a hardhat, rubber boots, safety glasses, and a raincoat because it was raining his first day on the job. He recalled that on July 15, 1990, someone came up to Batchman and him in a truck and told Batchman to do the job he had done the previous day. As they went to the tank, Batchman told him that it was caustic.

On June 22, 1993, the trial court filed its judgment entry in which it found that it was undisputed that C & W was an independent contractor and that appellant was engaged in an inherently dangerous activity at the time he was injured; that there was no evidence that appellees actively participated in any way in the transfer of the material; that appellees' interest in the overall safety at the refinery did not rise to the level of actual participation; that C & W instructed its employees on how to perform its job functions pursuant to its own internal procedures; and that C & W assumed the responsibility to perform its service in a safe manner. The trial court also found that appellant's argument that appellees' violation of OSHA regulations was evidence of negligence to be without merit. The trial court concluded that appellees " * * * did not owe a duty to Mr. Taylor for the injuries he received as a result of the risks inherent in the transfer of the spent caustic," and granted appellees' motion for summary judgment. It is from that decision that appellant has appealed.

In support of its assignment of error appellant argues that the evidence in the record demonstrates that on the date he was injured appellees went outside the established chain of command by going directly to Batchman rather than

going through a C & W foreman to assign the work. Appellant submits that as a part of the job a C & W foreman provides the necessary safety instructions and equipment and that by bypassing the C & W foreman, appellees assumed the role of foreman and thereby actively participated in the performance of the job and denied appellant access to the special equipment, instructions and warnings that should have been provided to him. Appellant asserts that by bypassing the foreman and then remaining silent as to the equipment, appellees created a dangerous condition that it should have recognized and acted to prevent. Appellant also argues that appellees' violation of OSHA regulations constituted negligence *per se* or at least evidence of negligence.

■ Generally, the employee of an independent contractor hired by an owner of premises to do work thereon is an invitee, *Hozian v. Crucible Steel Casting Co.* (1937), 132 Ohio St. 453, 8 O.O. 375, 9 N.E.2d 143, paragraph three of the syllabus, to whom the owner owes a duty of ordinary care to maintain the premises in a reasonably safe condition and to inform of hazardous conditions and activities on the premises which are unknown and not obvious to the invitee. *Bosjnak v. Superior Sheet Steel Co.* (1945), 145 Ohio St. 538, 31 O.O. 188, 62 N.E.2d 305, paragraph one of the syllabus. This duty is the same whether it arises at common law or pursuant to R.C. 4101.11,[2] *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165, 1167–1168.

■ Under the independent contractor exception, however, that duty does not extend to employees of an independent contractor, (1) where the danger is open or obvious, *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 360, 56 O.O. 319, 321–322, 126 N.E.2d 906, 910; or (2) "[w]here an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger * * *," *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus; or (3) where there are "hazards which are inherently and necessarily present because of the nature of the work performed," *Eicher, supra,* at syllabus; or (4) where the hazard is "created by negligent operation by the independent contractor or his employees," *Schwarz, supra,* paragraph two of the syllabus.

In *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, the Supreme Court of Ohio created an exception to this rule of "inherent risk" stating at the syllabus:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails

---

2. R.C. 4101.11, Ohio's frequenter statute, imposes a duty on the owner or occupier of premises to protect employees and frequenters and to provide them with a safe workplace.

to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor."

The Supreme Court in *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, at syllabus, held further that:

"A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work."

The *Hirschbach* court found that a jury question was presented as to whether or not the owner of the premises actually participated in the job operation by dictating the mode and manner in which a certain phase of the independent contractor's job was done.

In *Cafferkey*, the court found no active participation by a general contractor where that general contractor did not give or deny permission for the "critical acts that led to the decedent's injuries" and where the details of the subcontractor's performance were directed and carried out solely by the subcontractor's employees without direction or interference by the general contractor.

Other courts have determined that active participation requires some direct involvement in a subcontractor's work, such as instructing how to perform as opposed to simply when and where, and participation beyond a mere supervisory role. See *Gross v. Western–Southern Life Ins.* Co. (1993), 85 Ohio App.3d 662, 621 N.E.2d 412; *Betzner v. Navistar Internatl. Transp. Corp.* (1991) 77 Ohio App.3d 611, 603 N.E.2d 256; *Brauning v. Cincinnati Gas & Elec. Co.* (1989), 54 Ohio App.3d 38, 560 N.E.2d 811.

In this case, it is undisputed that C & W was an independent contractor on appellees' premises and that, at the time of the incident, appellant and Batchman were engaged in inherently dangerous work. The issue that remains therefore is whether appellant has submitted evidence that is sufficient to raise a genuine issue of fact as to whether appellees, through their foreman, actively participated in the job performance so as to create a duty of care extending from appellees to appellant.

Upon consideration of all of the evidence that was before the trial court and the law as set forth above, this court finds (1) there remains no genuine issues as to any material fact; (2) the only evidence of any participation in appellant's job performance by appellees is that appellees' foreman, in the absence of any C & W foreman on site, told Batchman which job needed to be done; (3) reasonable minds can only conclude that this action did not constitute direct or active participation as required by *Hirschbach* and *Cafferkey* to create a duty of care

extending from appellees to appellant; and (4) appellees are entitled to judgment as a matter of law.

As to appellant's assertions that appellees' violations of OSHA regulations constitute negligence *per se* or at least evidence of negligence, we find that the trial court did not err in finding these assertions without merit. See, generally, *State ex rel. Goodyear Tire & Rubber Co. v. Tracey* (1990), 66 Ohio App.3d 71, 583 N.E.2d 426, and *Frazier v. Royal Brass Mfg. Co.* (1990), 70 Ohio App.3d 748, 591 N.E.2d 1368.

Accordingly, appellant's sole assignment of error is found not well taken.

Upon consideration whereof this court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK and GLASSER, JJ., concur.