OPINION
Plaintiffs-appellants Mr. and Mrs. Robert Cross appeal from the trial court's orders respectively, in granting a directed verdict in favor of defendant-appellee Hydracrete Pumping Company, Inc., and in granting summary judgment in favor of defendant-appellee Mill River Associates arising from plaintiff's injuries when the cement mixer boom plaintiff Robert Cross was operating struck a high voltage powerline. Plaintiffs maintain defendants were not entitled to judgments as a matter of law. We disagree and affirm the judgments below.
Defendant Mill River owns the Mill River Shopping Plaza located at 8191 Columbia Road in Olmsted Falls, Ohio. Due to the widening of Bagley Road, Mill River was required to reconstruct a loading dock located on property immediately adjacent to Bagley Road. Mill River contracted with HR Mason Contractors ("HR") to reconstruct the loading dock. HR subcontracted the concrete portion of the project to both Westview Concrete and defendant Hydracrete. Westview supplied the concrete and Hydracrete was responsible for pumping the concrete into the walls constructed by HR. The plaintiff Robert Cross was a Hydracrete employee who was responsible for working the pump truck.
On May 12, 1994, the plaintiff arrived with a pump truck in order to pour the concrete. All the parties were concerned as the truck was an extremely large truck with a tall boom on top. The project entailed the pouring of concrete under a 13,200 volt CEI power line. Hydracrete was unaware that there were power lines above the project as it did not view the site before sending the truck. After discussions between Mill River's representative, Jack Page, and HR's site representative, Gregory Blauser, the plaintiff positioned the truck parallel to and beneath the power line. The boom gradually reached higher in the air as the concrete wall was filled in. As plaintiff was maneuvering the boom, it came into contact with the power line which caused a power surge through both the pump truck and the concrete supply truck. As a result, the plaintiff was severely injured.
Plaintiffs brought an action against Hydracrete and Mill River contending that Hydracrete should have sent a concrete pump trailer/hose truck to the job site rather than the truck with the boom and that Mill River was liable as it actively participated in the positioning of the truck. The trial court granted summary judgment in favor of Mill River and after plaintiffs presented their case at trial, the trial court granted Hydracretes motion for a directed verdict. Plaintiffs timely appeal from these judgments.
We will address plaintiffs' assignments of error in the order presented.
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE HYDRACRETE'S MOTION FOR A DIRECTED VERDICT BECAUSE WHEN VIEWING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO APPELLANT REASONABLE MINDS COULD DIFFER AS TO WHETHER HYDRACRETE COMMITTED AN INTENTIONAL TORT UNDER THE STANDARD SET FORTH IN FYFFE V. JENO'S, INC. (1991). 59 Ohio ST.3d 115.
The test for determining the merits of a directed verdict was recently stated by this Court in Glover v. Boehm Pressed SteelCo. (1997), 122 Ohio App.3d 702, 709:
 A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to that party. Civ.R. 50(A)(4); Crawford v. Halkovics (1982) 1 Ohio St.3d 184, 1 OBR 213, 438 N.E.2d 890; The Limited Stores, Inc. v. Pan Am. World Airways, Inc. (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027.
 A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of this claim. Cooper v. Grace Baptist Church (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357, 360-361. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141, 141-142; Vosgerichian v. Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, unreported. 1996 WL 86684.
The legal standard by which we must measure the plaintiffs intentional tort claim against Hydracrete is set forth in the leading case of Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraphs one and two of syllabus:
 Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employers conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However the mere-knowledge and appreciation of a risk — something short of substantial certainty — is not intent. * * *
Plaintiffs failed to establish the threshold requirement that Hydracrete had prior knowledge of the existence of the dangerous condition. There was no evidence that Hydracrete knew that the pumper truck would be placed in close proximity to overhead electrical lines; Hydracrete personnel did not even know that overhead lines existed at the job site. Plaintiffs concede as much by claiming that Hydracrete, when contacted by HR, failed to inquire as to the presence of overhead electrical lines.
Since Hydracrete did not have knowledge of the existence of a dangerous condition, it could not have known that harm was substantially certain to occur to Cross, the necessary second prong of Fyffe. There is no evidence from which an inference could be drawn that Hydracrete knew with substantial certainty that the pumper truck would contact the electrical wire and cause injury to Cross. It is not enough, as Cross alleges, that sending boom trucks to construction sites and not inquiring about overhead power lines, made it "substantially certain" that an injury involving electrical wires would occur. In these kind of cases alleging intentional torts, the plaintiff has the burden of proving by a preponderance of the evidence that the employee had "actual knowledge of the exact dangers which ultimately caused the injury."Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. Since Hydracrete had no knowledge of the overhead wires on the construction site, it could not have actual knowledge that the pumper truck would make contact with overhead wires. Therefore, plaintiff could not establish that Hydracrete had actual knowledge of the exact dangers which ultimately caused Cross injuries.[1]
Furthermore, mere knowledge and appreciation of a risk does not serve to show intent on the part of the employer. Fyffe at 155. Even if Hydracrete recognized the risks involved in operating the pumper trucks in areas with overhead wires, this would not establish intent on the part of Hydracrete. Therefore, Cross could not establish that Hydracrete knew with substantial certainty that harm to Cross would result. The second requirement for an intentional tort by an employer was not established.
According to the final provision of the Fyffe standard, there must be proof that Hydracrete knew that injury to Cross was substantially certain to result, but proceeded despite this knowledge to compel him to expose himself to the hazard. However, Hydracrete did not dispatch Cross to a task that it knew was substantially certain to cause him injury. If Cross felt that the job was dangerous after viewing the location of the high voltage lines he could have refused to perform the task. His testimony shows that Hydracrete did not require Cross to perform the task.
 Q. In other words, if Hydracrete sent you to a job and you thought that it was an unsafe situation, with you operating the boom, you had a right not to do the job, you could say Im not going to do the job?
A. Yes.
Q. And that was okay with Hydracrete?
A. It would have to be.
 Q. They relied on your judgment because you had 21 years of experience?
A. Yes.
(Cross Depo. at 102).
We find that plaintiffs have failed to satisfy all of the threeFyffe requirements. A directed verdict was properly granted.
Plaintiffs' Assignment of Error I is overruled.
 II. THE TRIAL COURT ERRED IN GRANTING THE SUMMARY JUDGMENT MOTION OF DEFENDANT-APPELLEE MILL RIVER ASSOCIATES BECAUSE WHEN VIEWING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF-APPELLANT, REASONABLE MINDS MAY DIFFER AS TO WHETHER APPELLEE MILL RIVER ASSOCIATES ACTIVELY PARTICIPATED IN THE CONSTRUCTION JOE SO AS TO IMPOSE A DUTY OF REASONABLE CARE.
Mill River moved for summary judgment on the ground that it did not owe plaintiffs any duty of due care since it did not actively participate in or control the means or manner of work being done at the construction site which caused plaintiffs injuries. As the trial court did, we find merit to these contentions.
Under Civ.R. 56 (C), summary judgment is proper when:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.
State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327. It is well-settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial.Wing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108, 111;Celotex, supra, at 322-323. In accordance with Civ.R. 56 (E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." Chaney v. Clark Cty. AgriculturalSoc. (1993), 90 Ohio App.3d 421, 424.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio modified the summary judgment standard as was applied under Wing. Presently, under the new standard, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or a material element of the nonmoving party's claim."Dresher, supra, at 296.
This Court reviews the lower court's granting of summary judgmentde novo. Brown v. Scioto Bd. off Commrs. (1993), 87 Ohio App.3d 704,711 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56 (C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741.
In order for plaintiff to defeat Mill River's motion for summary judgment, it is elementary he must identify a duty owed to him by Mill River which was breached. Fuehrer v. WestervilleCity School Dist. Bd. of Edn. (1991), 61 Ohio St.3d 201. 204;Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. In Michaels v.Ford Motor Co. (1995), 72 Ohio St.3d 475, 478 the court held that an owner of a construction site may only be liable to injured employees of an independent contractor if the owner actively participates in the details of a contractors work. See, also,Zink v. Owens-Corning Fiberglass Corp. (1989), 65 Ohio App.3d 637,640; Simko v. Lee Homes, Inc. (Sept. 14, 1995), Cuyahoga App. No. 68372, unreported. The term "actively participates" means "directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employees injury, rather than merely exercising a general supervisory role over the project." Bond v. Howard Corp. (1995),72 Ohio St.3d 332, 337.
The plaintiff has argued that a genuine issue of material fact exists in this case as to whether Mill River "actively participated" in the construction job so as to impose a duty of reasonable care upon Mill River. The only representative from Mill River who was at the construction site at the time of the accident was Jack Page. Page was hired by Mill River as its representative for the project. His job was to check on the progress of the contractors work to see that it was done according to the architects blueprints. He did not do the work nor did he tell the contractors how to do their jobs. His supervision of the site does not constitute "active participation." As the court stated in Bond, "supervision of a construction job * * * has never constituted `active participation' in the work of an independent contractor." Bond at 339.
Nor did Mill River give or deny permission for the "critical acts" that led to plaintiffs injury. The "critical act" that led to plaintiff's injury was his own negligent operation of the pump truck boom. Jack Page never directed plaintiff as to the manner in which the boom was to be operated. Page simply suggested where the truck should be placed upon being asked for his input by plaintiff and HRs site representative, Gregory Blauser, who had been discussing the truck placement. (Page Depo. at 33-34).
The position of the truck was not the "critical act" that led to plaintiff's injury; it was his own negligent operation of the pump truck boom, resulting in contact with the electrical wires, that caused plaintiff's injury.
Furthermore, the duty to warn arises only when there is an unknown hazard. Betzner v. Navistar International Transport Corp. (1991). 77 Ohio App.3d 611, 614. In Betzner, a case very similar to this one, an employee on a paving crew was injured when the handle of his uninsulated metal check rod came into contact with electrical power lines above the area where he was working. In Betzner, the plaintiff admitted in his deposition that he was aware of the overhead electrical wires and that he knew of the hazard posed by actual contact with the electrical wires. Id. at 615. The court held that there was no duty of protection when the employee proceeded with knowledge and appreciation of the danger.
 [O]ne who engages the services of an independent contractor ordinarily owes no duty of protection to the employees of the independent contractor when the independent contractor or his employees proceeds with the knowledge and an appreciation of the danger the work entails. [cites omitted]. Thus, while an owner/occupier of premises generally owes no duty to protect an employee of an independent contractor, he does owe a duty to provide safe premises, as well as a duty to warn of abnormally dangerous conditions of which the employee is unaware. Eicher, supra.
Id. at 614.
In this case, Mr. Cross was aware of the electrical wires above him and he knew of the potential risks when he decided to position his truck parallel to the wires. (Page Depo. at 87, 91) In fact, he almost touched the boom to the wire minutes before this incident, but Blauser was able to shout a warning to him. (Blauser Depo. at 45-47). Since plaintiff knew and appreciated the potential danger that the work entailed, Mill River owed no duty of care to him. See Evans v. Whirlpool Corp. (1967), 10 Ohio St.2d 240,241; Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph two of syllabus; Davis v. Charles Shutrump SonsCo. (1942), 140 Ohio St. 89, paragraph four of syllabus; Koch v.Lind (1997), 121 Ohio App.3d 43. 57-58.
Plaintiffs' Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI. J., and ANNE L. KILBANE. J., CONCUR.
JAMES M. PORTER, ADMINISTRATIVE JUDGE
[1] Plaintiffs' attempt to impute actual knowledge through an OSHA violation (Hydracretes failure to inspect the site for powerlines) is misplaced. An OSHA violation might present evidence of negligence. See Hernandez v. Martin Chevrolet, Inc. (1995), 72 Ohio St.3d 302. However, plaintiffs sued Hydracrete for intentional tort, not negligence.