OPINION
{¶ 1} Plaintiff-appellant, Kenneth Harlan, appeals a decision of the Butler County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Universal Forest Products, Inc. ("UFP"), in an action for an employer intentional tort. We affirm the decision of the trial court.
 {¶ 2} Appellant was employed as a temporary laborer at UFP's Hamilton, Ohio facility. Appellant's work duties included using a French Gothic saw, which is an industrial power saw. The saw was designed and manufactured by UFP for the preparation of 4x4 wood posts to be used as fence posts.
 {¶ 3} When using the French Gothic saw, an operator is instructed by the safety manual to wear safety glasses, earplugs, and a back support. The manual does not list gloves as an item to be worn. However, appellant asserts that UFP supplied him with gloves and instructed him to use them at all times.
 {¶ 4} Operators follow a standard procedure when running the saw. 4x4 pieces of lumber are stacked one on top of another, three to four deep, and then fed into a cutting chamber within the saw. The boards are then pulled back out of the saw, turned, and re-fed into the saw to make a second pass. The finished posts are pushed through the saw to the other side where they are removed. The saw contains blades that shape the tops of the 4x4 lumber into fence posts.
 {¶ 5} Several steps must be completed before the saw can begin operation. First, the boards must activate a roll over switch just before entering the cutting chamber. After the roll over switch is activated, a recessed activation button located on the side of the saw must be pressed. At this point, the cutting blades automatically retract and the boards are either pulled back for the second pass or pushed through to the exit side of the machine.
 {¶ 6} On March 22, 2000, appellant was injured while operating the French Gothic saw at UFP's Hamilton facility. Appellant claims that he was carrying 4x4 lumber when he tripped over the saw's exhaust hose and fell in such a manner that his left hand and glove became trapped between the 4x4 he was carrying and a stack of 4x4 posts already stationed on the saw. Once his hand was trapped, the boards were drawn or shoved into the saw and a blade rolled down over his hand Appellant suffered amputations of the index and middle fingers of his left hand
 {¶ 7} On March 21, 2002, appellant filed a complaint to recover for injuries sustained to his left hand UFP answered the complaint and denied all liability to appellant. Appellant and UFP produced affidavits, depositions, and evidence on the accident. This information revealed that no one knows how or when the recessed activation button was pushed. Furthermore, there was no evidence to indicate that the saw malfunctioned.
 {¶ 8} In support of his employer intentional tort claim, appellant submitted the expert opinion of H. Boulter Kelsey, Jr., P.E. ("Kelsey"). Kelsey is a certified forensic engineer. Kelsey inspected the French Gothic saw and concluded that the saw was unreasonably dangerous. Moreover, he contended that an accident was likely to occur at the Hamilton facility without a protective guard on the saw.
 {¶ 9} Appellant did not present any evidence that an injury similar to his had resulted from the French Gothic saw at UFP's Hamilton facility. However, appellant did offer evidence concerning an accident involving a French Gothic saw at another UFP facility in Elizabeth City, North Carolina on February 10, 1999. The Elizabeth City injury occurred when Thomas Moseley intentionally placed his hand into the out-feed side of a French Gothic saw to retrieve a jammed board.
 {¶ 10} Appellant's counsel also provided evidence that UFP has a record of workplace violations in Ohio. Kim Hildebrand, director of risk management at UFP, stated at her deposition that OSHA has cited UFP numerous times. And an OSHA document produced by appellant showed that UFP was cited immediately following appellant's accident for violations involving the French Gothic saw. However, before appellant's accident there are no records of any violations pertaining to the use of the French Gothic saw.
 {¶ 11} UFP moved for summary judgment on July 15, 2003. UFP claimed that appellant had failed to meet the three-pronged test that must be satisfied to establish an employer intentional tort. On October 31, 2003, the trial court granted summary judgment in favor of UFP. Appellant appeals the decision raising four assignments of error which will be addressed out of sequence.
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "The trial court erred in granting summary judgment to ufp when reasonable minds could differ as to whether ufp comitted an employer intentional tort."
 {¶ 14} Appellant argues that "in an action for an employer intentional tort, an employer's motion for summary judgment must be denied where the record contains evidence of a prior similar injury on an identical machine, failure to guard the machine after the prior injury, an opinion by a forensic engineer that the employer's failure to guard the machine made Plaintiff-Appellant's injury substantially certain to occur, and OSHA's citation of the employer for more than a dozen guarding violations before Plaintiff-Appellant's injury."
 {¶ 15} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 16} Appellant asserts that the trial court erred in granting summary judgment in favor of his employer for his work-related injury. Generally, actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes. Blankenship v.Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608,614. An exception to this rule includes claims for injuries caused by employer intentional torts. See Johnson v. BP Chems.,Inc., 85 Ohio St.3d 298, 1999-Ohio-267.
 {¶ 17} To prevail in an action for intentional tort against an employer, a plaintiff must show: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 18} Cases involving workplace intentional torts must be judged on the totality of the circumstances surrounding each incident. Gibson v. Drainage Prods., Inc., 95 Ohio St.3d 171,178, 2002-Ohio-2008, at ¶ 27. Mere knowledge and appreciation of a risk does not establish "intent" on the part of the employer.Cross v. Hydracrete Pumping Co., Inc. (1999),133 Ohio App.3d 501, 507, citing Fyffe at 118. There must be proof that the employer acted despite a known threat that harm to an employee is substantially certain to occur. Kunkler v. Goodyear Tire Rubber Co. (1988), 36 Ohio St.3d 135, 139. Proof of the employer's intent "is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee * * * the proof of the employer's intent must still be more than negligence or recklessness." Emminger v. Motion Savers, Inc. (1990),60 Ohio App.3d 14, 17.
 {¶ 19} An employer may be liable for the consequences of its acts even though it never intended a specific result. Gibson v.Drainage Products, 95 Ohio St.3d 171, 179, 2002-Ohio-2008, at ¶28. "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." Id., quoting Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 115. Nevertheless, an employer is considered to have intended to cause injury to an employee "only when a reasonable person could infer from the surrounding circumstances that the employer, with knowledge of a risk ofcertain injury from a dangerous condition, still requires anemployee to perform the dangerous procedure." (Emphasis sic.)Youngbird v. Whirlpool Corp. (1994), 99 Ohio App.3d 740, 747, citing Fyffe, at paragraph two of the syllabus.
 {¶ 20} The first prong of Fyffe requires evidence that the employer had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation.
 {¶ 21} Appellant argues that the French Gothic saw by itself is a dangerous instrumentality. Furthermore, appellant asserts that the existence of a safety protocol by UFP is tacit acknowledgement of the hazards inherent in the use of the French Gothic saw. The UFP safety protocol called for all work areas to be clear of trip hazards.
 {¶ 22} Appellant maintains that his accident was caused when he tripped over an exhaust hose on the floor in front of the saw in such a way that it created a trip hazard. However, appellant admitted in his deposition that he tripped over the hose "three to four" times during the week of the accident. Nevertheless, appellant failed to raise this concern with his supervisors regarding the placement of the exhaust hose.
 {¶ 23} Additionally, at the time of the accident, the French Gothic saw was equipped with two safety mechanisms that had to be activated prior to a cutting cycle. First, a trip switch was activated when lumber was fed into the saw. The second safety mechanism was an activation button that was recessed. Simply bumping the button would not start the cycle, it required pressing the button inside the lip.
 {¶ 24} There is no proof that UFP had knowledge of a safety or tripping hazard with the French Gothic saw. Furthermore, there is no proof that UFP knew an injury to an employee was substantially certain to occur with the French Gothic saw when it was equipped with two safety mechanisms that must be activated prior to a cutting cycle. See Kunkler, 36 Ohio St.3d at 139. Therefore, appellant failed to satisfy the first prong ofFyffe.
 {¶ 25} The second prong of Fyffe requires evidence that the employer had actual knowledge that its conduct would result in a substantially certain injury to the employee.
 {¶ 26} Here, appellant contends that there was no guard to prevent the operators from placing or having their hands drawn into the French Gothic saw while the blades were engaged. Appellant argues that the lack of a guard coupled with the fact that UFP designed and built the French Gothic saw notified UFP of the substantial certainty that injury would occur to an operator of the French Gothic saw.
 {¶ 27} Appellant presented evidence that a prior accident occurred on the same type of French Gothic saw at the UFP factory in Elizabeth City, North Carolina. However, the Elizabeth City accident occurred when an employee, Moseley, was working on the out-feed side of the saw. His duty was to retrieve the posts after they had been formed by the blades. Moseley intentionally stuck his hand into the out-feed side of the saw while the blades were engaged to retrieve what he believed was a jammed board. His hand was injured in the process.
 {¶ 28} We agree with the trial court and find that little notice could be gained from an intentional act of an employee. Furthermore, the Moseley injury resulted from a different activity than the activity which appellant was performing when his injury occurred. Moseley was working on the out-feed side of the French Gothic saw removing cut lumber, whereas appellant was working on the in-feed side of the saw stacking lumber to be cut. The French Gothic saw turns on and cuts lumber only after two safety mechanisms are activated. We find that the Moseley accident did not put UFP on notice that an injury such as that which appellant sustained was substantially certain to occur. Consequently, appellant has failed to satisfy the second prong ofFyffe.
 {¶ 29} Furthermore, appellant's argument that the French Gothic saw by itself is a dangerous instrumentality fails under the "dual capacity" doctrine. According to the "dual capacity" doctrine, appellant is precluded from bringing a products liability suit when his employer is also the manufacturer of the instrumentality of injury. Schump v. Firestone Tire and RubberCo. (1989), 44 Ohio St.3d 148, 153.
 {¶ 30} The third prong of Fyffe requires evidence that the employer, with knowledge of the existence of a dangerous instrumentality within its business operation and with knowledge that such dangerous instrumentality would be substantially certain to cause harm to the employee, acted to require the employee to continue to perform the dangerous task. Fyffe,
59 Ohio St.3d at syllabus.
 {¶ 31} Appellant fails on this prong also because he has not produced evidence that raises an inference that UFP had knowledge of a risk of certain injury from a dangerous condition, and still required an employee to engage in a dangerous task. Gibson,
2002-Ohio-2008 at ¶ 23, citing Hannah v. Dayton Power LightCo. (1998), 82 Ohio St.3d 482, 487; Kunkler,36 Ohio St.3d at 139. Accordingly, appellant's second assignment of error is overruled.
 {¶ 32} Assignment of Error No. 1:
 {¶ 33} "The trial court erred by finding that the employer's acknowledgement of the obvious risk involved in operating machinery used for cutting or sawing did not meet the first prong of the test for an employer intentional tort provided by FyffeV. Jeno's Inc., 59 Ohio St.3d 115 (1991)."
 {¶ 34} Appellant argues that "the first prong of the Fyffe
test is met by presenting evidence that an employer had knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation, and no finding of intent is required."
 {¶ 35} As stated above, the first prong of the Fyffe test requires this court to determine whether a genuine issue of material fact exists as to whether UFP knew that a dangerous instrumentality within its business existed. In seeking to define "intentional tort," the Ohio Supreme Court recognized that, although many employment situations involve obvious dangers incident to employment, not all such obvious risks will satisfy the intentional tort standard. The court stated:
 {¶ 36} "[I]n determining the level of `risk exposure that will satisfy the "intentional wrong" exception * * * [c]ourts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitled the employee to recover only under the Compensation Act?'" Van Fossen,36 Ohio St.3d at 116.
 {¶ 37} There are many "acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort.'" Id. at 117. The employee must show that the employer possessed "actual knowledge" that injury to the employee was a substantial certainty. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,172. Knowledge of some risk does not equate with substantial certainty. Shreve v. United Elec. Constr. Co., Inc., Ross App. No. 01CA2626, 2002-Ohio-3761, at ¶ 51.
 {¶ 38} UFP instituted safety measures and warned the employees of the risks involved in operating the French Gothic saw. Furthermore, appellant has failed to demonstrate that UFP possessed "actual knowledge" that injury to the employee was a substantial certainty. Therefore, the second assignment of error is overruled.
 {¶ 39} Assignment of Error No. 4:
 {¶ 40} "The trial court erred in finding that plaintiff-appellant failed to meet his burden of proof on the first two elements of the Fyffe test and, therefore, erred in failing to complete the analysis of the third element."
 {¶ 41} Appellant argues that "where the employee's job required him to be at the work site and use the equipment provided, prong three of the Fyffe test is satisfied." Appellant maintains that UFP required "its employees to use the French Gothic [saw] even though it knew that a tripping hazard existed on the floor of the work area and that there was no guard on the opening of the machine to prevent the operator's hand from intentionally or accidentally getting into the cutting blades."
 {¶ 42} The third prong of Fyffe is met by presenting evidence that the employer, with knowledge of the existence of a dangerous instrumentality within its business, and with knowledge that such a danger would be substantially certain to cause harm to the employee, acted to require the employee to continue to perform the dangerous task. Fyffe, 59 Ohio St.3d at syllabus. However, appellant has failed to demonstrate that UFP had knowledge that a hazard existed with the French Gothic saw to the extent that an injury was substantially certain to occur.
 {¶ 43} There are no records of any OSHA violations pertaining to the use of the French Gothic saw before appellant's accident. Furthermore, appellant admitted in his deposition that he tripped over the hose "three to four" times during the week of the accident, yet, he failed to raise this concern with his supervisors. Appellant has failed to demonstrate that UFP knew that an injury was substantial certain to occur with the French Gothic saw. Therefore, appellant failed to meet the third prong of Fyffe test.
 {¶ 44} Furthermore, appellant must meet all three prongs of the Fyffe test to maintain an intentional tort claim. As stated above, appellant has failed to meet the first two prongs of theFyffe test. As a result, the trial court was correct in disregarding the third prong of the Fyffe test in appellant's employer intentional tort claim. Consequently, the fourth assignment of error is overruled.
 {¶ 45} Assignment of Error No. 3:
 {¶ 46} "The trial court erred in failing to construe the evidence most strongly in favor of plaintiff-appellant, the nonmoving party."
 {¶ 47} Appellant argues that "construing all the facts and the inferences that arise most strongly in favor of Plaintiff-Appellant, reasonable minds could conclude that UFP committed an employer intentional tort in light of evidence of a prior similar injury on an identical machine, failure to guard the machine after the prior injury, an opinion by a forensic engineer that the employer's failure to guard the machine made Plaintiff-Appellant's injury substantially certain to occur, OSHA's citation of the employer for more than a dozen guarding violations before Plaintiff-Appellant's injury, UFP's knowledge of the risk presented by tripping hazards in the work area, and UFP's supplying gloves to Plaintiff-Appellant despite a history of employees' having sustained injury from getting their hands near a blade or pinch point."
 {¶ 48} The court construes the evidence most strongly in favor of the nonmoving party but is guided by the test promulgated by Van Fossen. Although the facts may indicate some evidence of negligence, the conduct at issue does not rise to the level of an intentional tort. Furthermore, the facts may have resulted in a violation of OSHA regulations but that amounts to, at most, some evidence of negligence. Again, that does not rise to the level of an intentional tort.
 {¶ 49} Therefore, reasonable minds could conclude only that UFP did not have knowledge to a substantial certainty that the French Gothic saw was dangerous or that requiring appellant to use the French Gothic saw would, to a substantial certainty, cause him harm. Accordingly, summary judgment was appropriately granted. The third assignment of error is overruled.
Judgment affirmed.
Powell and Valen, JJ., concur.