CYR, EXECUTRIX, APPELLANT, *v.*
BERGSTROM PAPER CO., APPELLEE.

(No. 7380—Decided January 22, 1982.)

Messrs. *Wolske & Blue,* Mr. *Dennis M. McCarthy,* Messrs. *Hochman & Horowitz* and Mr. *James B. Hochman,* for appellant.

Messrs. *Green & Green* and Mr. *F. Thomas Green,* for appellee.

BROGAN, J. In 1978 the Bergstrom Paper Company, appellee, formulated a plan to reactivate a coal elevator located at its West Carrollton plant. Foreman Industries successfully bid on the job of renovating the elevator and began work in December 1978. On January 29, 1979 the platform upon which Foreman Industries employee Paul Cyr, Sr. was working collapsed resulting in his death.

Subsequently, Shirley Cyr, appellant, filed a complaint against appellee for negligently causing her husband's death. She alleged essentially that appellee had failed to provide decedent with a safe place to work, R.C. 4101.11, and, alternatively, that appellee negligently provided decedent with an unsafe instrumentality with which to perform the necessary work, Restatement of Torts 2d, Section 392.

A jury trial began on May 12, 1981 and at the close of appellant's case appellee moved for a directed verdict. Appellant filed a memorandum in opposition but, on May 21, 1981, the court granted the motion, finding no evidence of actual

or constructive knowledge by appellee of a dangerous condition in the platform.

Upon timely appeal, appellant contends as her sole assignment of error that:

"The trial court erred in sustaining defendant's motion for a directed verdict on the issue of liability."

The pertinent facts in this case, construed in accordance with Civ. R. 50(A)(4), indicate that the coal elevator consisted basically of a chain and bucket mechanism driven by a motor mounted at the top, all of which was surrounded by a metal housing. A platform was attached near the top of the housing (at a height of approximately seventy feet) to provide a service area for the motor drive equipment.

Appellee had not been involved in the original construction of the elevator, which had occurred immediately prior to 1950. After purchasing the plant in 1972 appellee closed the plant in 1974 but reopened it again in 1975.

As determined from a visual inspection by appellee's chief engineer, the renovation of the elevator involved the replacement of various parts, including the housing. However, the platform was to be reused. Therefore, the platform had to be separated from the housing.

The platform originally had been bolted to supports which were welded to the housing. Some of the bolts were badly rusted, though not severely enough to be removed with a spud bar. Consequently, to detach the platform the Foreman Industries crew cut the bolts with an acetylene torch.

On Friday, January 26, 1979 members of the crew attached the platform to the new housing by means of arc welding. The following Monday, Mr. Cyr and another individual were putting the motor into place and another crew member was preparing to go up to weld several braces into place when the platform collapsed.

As determined by an expert in metallurgical engineering who testified on appellant's behalf, the platform had been constructed of medium to high carbon steel, which fact could not be detected by a visual inspection. A potentially dangerous propensity of higher grades of carbon steel is that they may become brittle when heated beyond a certain temperature and then cooled rather rapidly. This brittleness may cause the steel to become extremely hazardous under stress.

It appears that the portions of the platform heated by the cutting and welding procedures in fact had become brittle as a result of such treatment and fractured under stress, causing the collapse of the platform.

Appellant contends that appellee's failure to perform structural tests on the platform, to inspect (other than a visual inspection from some distance away) or to inform the Foreman Industries employees of the age or properties of the platform constituted a violation of appellee's duties under the "frequenter" statute, R.C. 4101.11.

R.C. 4101.11 provides that,

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

"Frequenter" is defined in R.C. 4101.01 as including:

"(E) * * * every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

The term "frequenter," therefore, in-

cludes independent contractors on premises owned and controlled by the employer with whom they have contracted. See, *e.g., American Steel & Wire Co.* v. *Sieraski* (C.A. 6, 1941), 119 F. 2d 709 [21 O.O. 96]. However, the duty exacted under R.C. 4101.11 is not substantially different from that imposed by Ohio law upon an owner of property towards an invitee. *Ford Motor Co.* v. *Tomlinson* (C.A. 6, 1956), 229 F. 2d 873 [59 O.O. 345]; *Debie* v. *Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38 [40 O.O.2d 52].

As stated in Prosser on Torts (4 Ed. 1971), 392-393:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. The obligation extends to the original construction of the premises, where it results in a dangerous condition."

See, also, *Perry* v. *Eastgreen Realty Co.* (1978), 53 Ohio St. 2d 51 [7 O.O.3d 130].

Thus, an employer may be liable to an independent contractor, as an invitee, for injuries caused by a dangerous condition but, only if he knew or reasonably should have known of the condition. However, the invitee will be held to have assumed the risk of injury if he also knew or reasonably should have known of the dangerous condition. *Davis* v. *Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89 [23 O.O. 299]; see *Moore* v. *Denune &*

*Pipic, Inc.* (1971), 26 Ohio St. 2d 125 [55 O.O.2d 237]; Restatement of Torts 2d, Sections 343 and 343(A); 3 Ohio Jurisprudence 3d, Agency and Independent Contractors, Sections 233-235; 36 Ohio Jurisprudence 2d, Master and Servant, Sections 96-126.

Appellant also maintains that she established sufficient evidence of appellee's liability under Restatement of Torts 2d, Section 392, which provides that:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

"(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

See, also, *Hilleary* v. *Bromley* (1946), 146 Ohio St. 212 [32 O.O. 188].

Assuming this principle is applicable to the present situation appellee-supplier's duties are dependent, to the same extent as appellee-employer's responsibilities under R.C. 4101.11, upon its actual or constructive knowledge of the dangerous instrumentality. See Restatement of Torts 2d, Section 388.

Thus, the central issue is whether appellee knew or should have known of the potential danger involved in working on the elevator platform.

It is clear that appellant did not provide the trial court with any evidence which would indicate that appellee knew of the potential danger due to the nature of the steel from which the platform had been constructed.

Further, a simple inspection of the

premises would not have been sufficient to enable appellee to detect the dangerous condition. Researching the history of the platform to determine whether the original plans indicated the type of metal used in construction, and testing the metal, appear to have been the only two methods of discovery available.

Assuming that the appropriate representative for appellee knew or should have known of the dangerous propensities of medium to high carbon steel, the evidence did not show that an examination of the original plans would have provided appellee with the necessary information concerning the quality of steel. In addition, requiring such research or the performance of tests upon the metal would appear to force appellee to become an insurer of the safety of independent contractors rather than mandating the exercise of reasonable care.

Thus, we must conclude that the evidence did not establish an issue as to whether appellee should have known of the dangerous condition of the platform.

Appellant's assignment of error is denied.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PHILLIPS and WILSON, JJ., concur.