I must respectfully dissent in part from the majority opinion of my colleagues. While I agree that summary judgment was proper as to defendant Columbus Southern Power Company [hereinafterCSPC], I must disagree with this position as to defendant Kokosing Construction Co., Inc. [hereinafter Kokosing]. Material issues of fact exist which preclude a grant of summary judgment in favor of Kokosing by the court below.
 Concurring as to Columbus Southern Power Company
I concur in that portion of the majority's Judgment and Opinion, which affirms the grant of summary judgment to CSPC. The evidence and testimony establish that CSPC did not actively participate in the construction of the new highway, relying instead on their contractor, Floyd Pike Electric, to move poles and power lines out of the path of the new road. The electric wires in question met applicable standards for high-voltage service wires stretched across an open highway. One accident witness recalls other trucks and trailers parked on this paved stub of Ohio Route 7 before construction began. While Floyd Pike Electric worked on these lines about a month before the accident, neither its crew nor the CSPC project supervisor took note of any construction materials beneath the lines at that time.
Another CSPC supervisor, whose role involved the setting of timetables, was in contact with Kokosing. This supervisor testified that normal practice was to mark power lines if requested by a contractor but that Kokosing did not request any hazard flags before the accident date. Hence, as the majority notes, the duty owed by CSPC to Marshall was limited. "Foresight, not retrospect, is the standard of diligence." Hetrick v.Marion-Reserve Power Co. (1943), 141 Ohio St. 347, 355,48 N.E.2d 103, 108. Since these lines were well above normal traffic paths, it was not foreseeable to CSPC that Kokosing would create a supply dump underneath these wires or that Marshall would raise his truck bed up into the wires. Therefore, CSPC violated no duty it may have owed Marshall, and summary judgment in its favor was proper and appropriate.
 Dissenting as to Kokosing Construction Co., Inc.
However, I must disagree and, therefore, dissent from the remaining part of the Judgment and Opinion that upholds summary judgment in favor of Kokosing. The majority relies upon the line of cases that may be generally characterized as the "hole in floor" cases, e.g. Bond (cited by the majority), and Michaels v.Ford Motor Co. (1995), 72 Ohio St.3d 475, 478, 650 N.E.2d 1352,1355. In such cases, unless the general contractor participates in the work, the employee of a subcontractor is held to be aware of the normal hazards of a construction job as well as specific hazards of that subcontractor's specialty. See Cafferkey, cited by the majority.
The majority, however, fails to address an important step in the analysis of the facts in the case at bar. In the cases cited above, the hazard was open and obvious: in Bond and Michaels, holes in the floor at a construction site; in Cafferkey, natural methane seeping into a cofferdam where a welding torch was in use; and in Wellman (also cited by the majority), work around high-pressure natural gas lines. The question of whether these power lines were an "open and obvious" hazard is a material question of fact and, therefore, a question for the jury. See Judge Kennedy's dissent in Burnep v. Labmark, Inc. (June 17, 1999), Franklin App. No. 98AP-962, unreported.
Were these power lines an "open and obvious" hazard? The testimony of a number of witnesses indicates that the morning of April 21, 1995, was dark and stormy. The accident occurred at approximately 8:00 a.m., about an hour and seventeen minutes after sunrise.[1] Kokosing's supervisor testified in his deposition that he sent the earth-moving crew home at 7:00 a.m. because of the wet weather.
The majority concludes that Marshall was at the wrong location when he dumped his load of sand. However, the testimony of the supervisor of the quarry that supplied the load of sand, Roy Bankes, indicates that Kokosing directed Marshall to dump at the "West End of stockpile by the school." The numerous photos submitted by the parties indicate that the Kokosing stockpile was only a few feet from where Marshall attempted to dump his load. Indeed, the CSPC employees who arrived on the scene just after the accident, Ernie Sissons and Clarence Robson, noticed adifferent pile of sand alongside Marshall's burned-out truck. This second pile of sand had obviously been dumped earlier by another, unknown person, because it had been beaten down by the falling rain. These CSPC employees also noticed piles of black plastic culvert and other materials in the same area. Kokosing's supervisor, Joe Sheets, conceded that these materials were in the same area that Marshall dumped his load of sand.
A second point is that Rocky Allen, Marshall's employee, testified that every other time they had delivered loads to the site, employees of Kokosing had directed them to where the loads would be dumped. This was the first time that they used this particular stockpile location. Joe Sheets, the Kokosing supervisor, testified that the company would use spotters if the trucks might encounter some kind of hazard. On the morning of the accident, no Kokosing employees were present to direct Marshall to this new dumpsite, or to act as spotters, while he dumped his load near these wires.
The duty to warn arises when there is an unknown hazard.Betzner v. Navistar Internatl. Transport Corp. (1991), 77 Ohio App.3d 611,614, 603 N.E.2d 256, 258-259, citing Eicher v. UnitedStates Steel Corp. (1987), 32 Ohio St.3d 248, 249,512 N.E.2d 1165, 1167. In Betzner, a case somewhat similar to the one at bar, an employee on a paving crew was injured when the handle of his uninsulated metal check rod came into contact with electrical power lines above the area where he was working. However, inBetzner, the plaintiff admitted in his deposition that he was aware of the overhead electrical wires and that he knew of the hazard posed by actual contact with the electrical wires, supporting that court's finding that no liability existed.
From a review of the depositions and the numerous pictures of the site, I am of the opinion that the actions of Kokosing created a hazardous condition of which Marshall was unaware. At this site, the stub end of the four-lane section of Route 7 extended north under the power lines. This area was paved, but not used as a road, traffic having been diverted to a county road running east and west, immediately south of the end of old Route 7. Just beyond this point, to the north, Kokosing was installing culvert across the route of the new road. A ditch dug for that culvert is visible in some of the photographic exhibits. In the area between the ditch and the paved end of the existing road there is a dirt road coming in from the west. Materials can be seen piled not only alongside this dirt road, but also around the end of the existing road (under the wires), on the paved stub of Ohio Route 7.
Joe Sheets, the Kokosing site supervisor, testified in his deposition that the sand delivered by Marshall was ordered by the "pipe superintendent" and was to be used to cover the "pipe" or black plastic culvert being installed by Kokosing. Sheets claims the actual dump site was to the north of where Marshall dumped; but, even so, the photographs still show materials from this stockpile only a few feet away from where Marshall dumped. As I noted above, the CSPC employees noticed a pile of sand alongside Marshall's truck. Joe Sheets testified that no one else delivered sand that morning.
I must then conclude that Kokosing's activities created a trap for Marshall that rainy day in April. This leads to two questions:
 1. Did Kokosing, by allowing others to dump materials under these electric wires, create a hidden hazard that lured Marshall to his death?
 2. Did Kokosing, by failing to use employees to direct Marshall to the proper dumpsite, breach a duty of care owed to Marshall, as the result of stockpiling materials near these electric wires?
Marshall was a frequenter, as defined in R.C. 4101.01(E), on the premises then occupied by Kokosing. R.C. 4101.11 and 4101.12
impose a duty on the owner and/or occupier of the premises to protect employees and frequenters and to provide them with a safe workplace. See Eicher, above, and Cyr v. Bergstrom Paper Co.
(1982), 3 Ohio App.3d 299, 300-301, 444 N.E.2d 1349, 1351-1352. The duty imposed under these statutes is not substantially different from the common law duty owed by the owner/subcontractor of property to an invitee. Debie v. CochranPharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38, 42,227 N.E.2d 603, 606. Thus, an owner or occupier is not an insurer of the safety of a frequenter/invitee; rather, he owes a duty to that individual "to exercise ordinary care to maintain the premises in a reasonably safe condition * * *." Debie, at 40,227 N.E.2d at 605.
A contractor who creates a dangerous condition on real property is not relieved from liability even if the hazard created is "open and obvious." Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 597 N.E.2d 504, syllabus. In Simmers, the injured party was a trespasser; while here a higher duty of care would ordinarily be owed to Marshall in his capacity as a frequenter. However, an "occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself from them." Carrozza v. Olympia Mgt., Ltd. (Sept. 2, 1997), Butler App. Nos. CA96-11-228 and CA96-11-234, unreported, citing Sidlev. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus.
It is at this point of the majority analysis that a critical and necessary determination is not addressed. That is, to determine whether or not these wires were an obvious hazard or a hidden hazard. Instead, they find that since construction work is, by its very nature, hazardous, the general contractor owes no duty to the subcontractor or its employees unless the general contractor participates in the work of the subcontractor. Participation in, or supervision of, the work of a subcontractor by the general contractor or site owner creates an exception to the rule that a site owner owes no duty to warn business invitees of obvious hazards. Whether or not the general contractor participates in the subcontractor's work has no relevance when examining the general contractor's duty to warn others of hidden
hazards on the job site.
In Hirschbach, cited by the majority, the utility hired a contractor to replace wires on an electric tower. Following the electric company's instructions, the contractor placed a crane too close to the tower, causing the tower to collapse. The Supreme Court of Ohio concluded that the utility had control over, and awareness of, this hazard. Hence, the question of the utility's liability for the contractor's injuries became a question for the jury. While Hirschbach is frequently cited to support the exception to the rule that no duty is owed where the hazard is obvious, it also stands for the proposition that the site owner has a duty to protect the business invitee against hazards over which it has control. The utility company inHirschbach knew what load its tower could support, and the fact that it specifically directed the placement of the crane only further cemented its duty to warn the subcontractor of this hidden hazard.
In the case at bar, Marshall dumped his load of sand at a location, where, from the instructions he received, he could reasonably conclude Kokosing desired to have the load dumped. Kokosing could have controlled the hazard by using spotters, as it had in the past on this job. In the alternative, it could have asked CSPC to mark the wires with plastic flags or placed its own ground-level warning signs.
In addition, even if I were to assume that the wires should have been an obvious hazard to Marshall, I am of the opinion that a jury question exists as to whether or not Kokosing "participated" in the work or "supervised" Marshall. See, e.g., for example, Sopkovich v. Ohio Edison (1998), 81 Ohio St.3d 628,693 N.E.2d 233. In Sopkovich, painters relied on Edison's employee to disconnect wires at various places in a substation they were painting. Both by Kokosing's use of spotters in the past, and by the activity under the wires permitted by Kokosing, Marshall relied on Kokosing's instructions to believe he could safely dump in this area.
I conclude, therefore, the question of the nature of the duty owed to Marshall by Kokosing, and hence its liability in this case, were questions for the jury. I, therefore, dissent from this portion of the majority opinion.
Accordingly, I would affirm as to defendant Columbus Southern Power Company, and reverse and remand as to defendant Kokosing Construction Co., Inc.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Evans, J.: Concurs in Part and Dissents in Part with Opinion.
For the Court
 BY: _______________________________ Roger L. Kline Presiding Judge
[1] According to the almanac, 6:43 a.m., EDT on April 21, 1995, at Pomeroy, Ohio.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.