[Cite as *Beckman v. Playhouse Square Found.*, 2014-Ohio-2651.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100627**

## DAVID BECKMAN

PLAINTIFF-APPELLANT

vs.

## PLAYHOUSE SQUARE FOUNDATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-795456

**BEFORE:** Celebrezze, P.J., S. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** June 19, 2014

**ATTORNEY FOR APPELLANT**

Frank P. Giaimo
Two Commerce Park Square
24400 Chagrin Boulevard
Suite 300
Beachwood, Ohio   44122


**ATTORNEY FOR APPELLEE**

Robert P. Lynch
Park Center Plaza II
Suite 450
6150 Oak Tree Boulevard
Independence, Ohio   44131

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, David Beckman, brings this appeal of the decision of the trial court granting summary judgment in favor of appellee, the Playhouse Square Foundation, ending Beckman's negligence action. Beckman argues he did not assume the risk of injury, and he disputes the open and obvious nature of that risk. After a thorough review of the record and law, we affirm the decision of the trial court.

## I. Factual and Procedural History

{¶2} As part of their orientation and training, volunteers for the theaters operated by the Playhouse Square Foundation, called Red Coats, must participate in guest evacuation training. In part, the training requires each Red Coat to review the evacuation routes as well as view a demonstration of how to operate the Palace Theater's counterbalanced fire escape stairways. These consist of external metal stairways attached to the building that end at the second story. A metal stairway that is suspended off the street some ten feet bridges the gap to the sidewalk. To lower the stairway, a person must step out onto the first few steps, using body weight to cause the stairway to lower, often with a jarring clang on the sidewalk below. Volunteers are instructed to hold onto the handrails and brace themselves for the impact. The volunteers are shown how to operate the stairway by the person leading their training, and then volunteers may elect to try it for themselves.

{¶3} On April 2, 2011, the Playhouse Square Foundation was conducting training for its volunteers. David Beckman, a veteran Red Coat, volunteered to operate the mechanical staircase facing Chester Avenue on East 17th Street. Scott Wright, house manager, was leading the instruction on that staircase that day. He demonstrated how the staircase operated and, according to Beckman, instructed the volunteers to place both hands on the railing on one side of the stairs. Beckman fell and sustained serious injury when he was operating the stairway, he claims, as a result of these instructions.

{¶4} Jeffrey Grubb, another Red Coat who witnessed Beckman's fall, heard the instructions given by Wright. Grubb remembered the instructions differently: "Put our hands on the inside of the rails, walk out to a point where it starts to come down, stop, and lean back and flex your knees and let the stairs come all the way down." Grubb elaborated that volunteers were warned not to wrap their hands around the rails because you could rap your knuckles on the other stairs as the stairway descended. He also noted further instructions advising that if you could not reach both rails "you can put both hands on one rail, preferably the one next to the building[,]" where there was not a risk that your fingers would get pinched. The difference in the instructions is the positioning of the hands of the person operating the stairway. Beckman remembered the instruction he received: "I was told that on that particular fire escape that I would have to hang on with both hands on the railing closest, close to the wall with my body in what I would call a twisting precarious position. And then, you know, go down the stairs."

{¶5} Grubb stated he was the first volunteer to use the stairs that day. After successfully activating the stairs and descending, Grubb watched other volunteers from the street where he witnessed Beckman's fall. Beckman stated he was the first volunteer to go down the steps, although this contradicts Grubb's account. The fire escape was functioning appropriately when Grubb observed Beckman climb out onto the stairway with both hands gripping the railing closest to the building where there is no danger of pinched fingers. As the stairs started to come down, Grubb observed that Beckman was leaning too far forward. When the stairs hit the sidewalk, Grubb saw Beckman lose his balance and fall down the stairs.

{¶6} Wright also recalled Beckman's descent. He described Beckman as continuing to move after the stairs had begun to descend. He also remembered that Beckman leaned forward instead of backward as the stairs began to drop. Wright saw that Beckman was in trouble and ran to the descending staircase to try to grab it and slow it down. Despite this, Beckman fell when the steps hit the sidewalk and tumbled the rest of the way to the ground below.

{¶7} On November 13, 2012, Beckman filed a complaint against the Playhouse Square Foundation for negligence and premises liability. An answer was filed and depositions were taken. On August 12, 2013, the Playhouse Square Foundation filed a motion for summary judgment. There, it argued that Beckman assumed the risk of traversing the fire escape, that he knew the risks, and that any hazard was open and obvious. Beckman opposed summary judgment on September 11, 2013. He argued that

his fall resulted from the unsafe manner in which he was instructed to grip the hand railing. On October 21, 2013, the trial court granted the Playhouse Square Foundation's motion for summary judgment. The trial court found:

> There is no genuine issue of fact that plaintiff cannot establish that defendant breached a duty owed to plaintiff. Plaintiff claims to have received instructions to use an unsafe grip during a fire escape drill which resulted in his fall. The evidence does not demonstrate how the instructions were negligent or how the grip used was unsafe. The manager who gave the instructions demonstrated use of the fire escape with the allegedly unsafe grip without incident. Further, plaintiff had received training and participated in fire escape drills for several years prior to his fall. Plaintiff was aware or should have been aware that falling was a risk involved in the fire escape drill. Defendant did not [owe] plaintiff a duty to warn plaintiff of such a known risk. *See Armstrong v. Best Buy Co.*, 990 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088; *see also Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 175, 258 N.E.2d 597 (1970). Therefore, the court finds there is no genuine issue of fact that plaintiff cannot establish a prima facie case of negligence against defendant. Defendant is entitled to summary judgment.

> {¶8} Beckman appeals from this decision assigning one error:

> I. The trial court erred in grating the defendant's motion for summary judgment.

## II. Law and Analysis

{¶9} This court reviews the grant of summary judgment de novo. *Brown v. Scioto Cty. Commrs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist.1993).

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶10} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Ohio Supreme Court modified and clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Id.* at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293. The nonmoving party must set forth

"specific facts" by the means listed in Civ.R. 56(C) showing that a genuine issue for trial exists. *Id.*

{¶11} A negligence action requires a plaintiff to demonstrate that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996).

{¶12} Here, Beckman and other Red Coats are invitees. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Id.* at 315. Therefore, the duty owed is that of ordinary care, which means that a landowner must exercise ordinary care and maintain the premises in a safe condition. *Lang* at ¶ 10.

{¶13} The Ohio Supreme Court further elaborated that "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at the syllabus, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). "[T]he

owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). Therefore, when a plaintiff is injured by an open and obvious danger, summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law. *Armstrong* at ¶ 15; *Lang* at ¶ 11.

{¶14} Here, the open-and-obvious doctrine is related to assumption of the risk. "The open-and-obvious doctrine is based upon the invitee's knowledge of the danger. *Sidle*. 'If an invitee knows of a dangerous condition, he will be held to have assumed the risk of injury from that condition.'" *Venable v. Greater Friendship Baptist Church*, 7th Dist. Mahoning No. 09 MA 79, 2010-Ohio-3159, ¶ 15, quoting *Davenport v. M/I Schottenstein Homes, Inc.*, 96 Ohio App.3d 237, 240, 644 N.E.2d 1074 (1st Dist.1993), citing *Cyr v. Bergstrom Paper Co.*, 3 Ohio App.3d 299, 444 N.E.2d 1349 (2d Dist.1982).

{¶15} In the present case, there is no evidence that the mechanical stairway was malfunctioning. In his deposition, Beckman acknowledged that it was functioning as others had in the past with which he had experience. This was his seventh or eighth time going through the evacuation training. Beckman only takes issue with the instructions given to him prior to his accident. He claims that he was instructed to use a less-than-safe grip on the railing and that this caused his fall.

{¶16} Beckman stated that he followed the instructions given by Wright and acted exactly as Wright had instructed and as Beckman had observed Wright act when Wright

lowered the stairway.  Beckman acknowledged in his deposition that the activity was dangerous and that there was a risk he could fall.  He ignored and assumed those risks when he volunteered to participate in an activity he knew beforehand was dangerous.

{¶17} Beckman claims that he was not able to fully appreciate the risk involved because he only was given instructions moments before he tried to operate the stairway. Had he known that he would be placing himself in what he described as a precarious, twisted position, he would not have volunteered. However, nothing stopped him from declining to participate in the activity after receiving instructions.  At that point, he did or should have fully comprehended the risks involved and the inherently dangerous nature of the activity. Everything he experienced when he walked out onto the stairway was demonstrated to him beforehand by Wright according to Beckman's own deposition testimony.

{¶18} This case is distinguishable from other cases where courts have held that assumption of the risk is not a valid defense in the employment context.  *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St.3d 145, 566 N.E.2d 1203 (1991).  Even though Red Coats are unpaid volunteers, the situation is so similar to the employment context that case law in the area could apply.  In *Cremeans*, the Ohio Supreme Court ruled that assumption of the risk was not a valid defense in the employment context because "an employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when he or she must encounter that risk in the normal performance of his or her required job duties and responsibilities."  *Id*. at 149.

**{¶19}** The distinguishing factor in the present case is that Red Coats are not required to participate in the activity that resulted in Beckman's fall. Lowering the stairway is voluntary.

**{¶20}** Grubb testified that during this portion of the evacuation training, Wright "asked for volunteers, if they want to, you know, practice to see how it works." (Grubb Depo. 7.) Wright testified during his deposition that each volunteer must complete evacuation training. The Red Coats are shown all evacuation routes. He stated, "whoever is leading the tour demonstrates [operation of the fire escape stairway]. Then we ask the volunteers if they would like to try it." (Grubb Depo. 22.) When describing the process, Wright stated, "I lower the escape first. Then I go up and I describe what to do as you're descending the escape, and then I ask for volunteers to go up. That's how it progresses." (Wright Depo. 27.) Later, he provided, "[a]gain, we ask for volunteers." (Wright Depo. 28.)

**{¶21}** Appellant's attorney made certain what was being asked: "Scott, forgive me, but I'm slowing down a little bit and taking this very carefully. You indicated that you asked for volunteers. A certain number of volunteers went up the escape to a landing I take it." (Wright Depo. 34.) When asked, "[d]id Playhouse Square require each Red Coat to go down the fire escape * * * for the training?" Beckman testified that it did, but admitted that one could opt out of going down the fire escape. (Beckman Depo. 80.) Therefore, going down the fire escape is not a condition of volunteering.

**{¶22}** In *Venable*, 7th Dist. Mahoning No. 09 MA 79, 2010-Ohio-3159, the Seventh District found that a roofer assumed the open and obvious risk of climbing a ladder that had been constructed by church members. The *Venable* court affirmed the application of the open-and-obvious doctrine and held there was no hidden condition not perceived by the plaintiff: "The ladder and its dangers were not hidden from appellant. He saw it, he held it, he considered its dangers and ignored them." *Id.* at ¶ 20.

**{¶23}** The same is true here. Beckman saw the operation of the stairway in the same manner that he stated he utilized. He was fully aware of the risks and assumed them when he stepped out onto the stairway. Beckman argues that the instructions given were negligent. He cites to nothing other than his own testimony, which indicates that gripping railings on either side of the stairs is plainly superior to the instructions he was given. Whether a certain positioning of the hands is better or worse when operating the stairway is not the standard for a negligence claim. By Beckman's own admission, the stairway can be operated safely with either grip because he observed Wright use this grip to operate the stairs without incident.

**{¶24}** Beckman likens this case to *McGuire v. Univ. of Akron*, Ct. of Cl. No. 2010-08900-AD, 2011-Ohio-2733. There, a dance student slipped and fell on a slippery area of a dance floor after being instructed to practice there. The Ohio Court of Claims determined that the dance student did not voluntarily assume the risk of injury inherent in the activity based on attendant circumstances, or those circumstances that would divert the attention of the injured person to such a degree that they would enhance the danger of

a defect and contribute to the cause of the injury. *Id.* at ¶ 10, quoting *Barrett v. Ent. Rent-A-Car Co.*, 10th Dist. Franklin No. 03AP-1118, 2004-Ohio-4646. The slippery spot on the floor, which was known to the teacher and the premises owner, constituted a condition more dangerous than the surrounding floor. Further, the instructions given to practice a complex dance routine in an area described as more slippery than the remainder of the studio floor distracted the injured dancer from awareness of the slippery condition.

{¶25} The same cannot be said of the present case. There was no enhanced dangerous or latent condition known to the Playhouse Square Foundation from which appellant was distracted by the instructions given by Wright. Further, the instructions were not negligent. Appellant was fully advised of the dangers and witnessed a demonstration of the operation of the stairway. Therefore, the Playhouse Square Foundation or its employees did not breach a duty owed to Beckman or prevent him from fully appreciating the risks involved prior to engaging in a dangerous activity.

{¶26} Here, Beckman admitted he understood that operating the stairway was inherently dangerous. He further did or should have fully understood the risks after receiving instructions from Wright prior to operating the stairway. Beckman's argument that he did not fully appreciate the risk, and therefore liability should attach, is not supported. *See LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986) ("Liability only attaches when an owner has 'superior knowledge of the particular danger which caused the injury' as an 'invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate'").

### III. Conclusion

**{¶27}** The dangers posed by lowering the stairway were made fully apparent to Beckman by demonstration and instruction. Beckman's argument that gripping the hand railing only on one side of the stairway was less than safe is not supported in the record. The voluntary operation of the stairway constituted an open and obvious danger to which Beckman was fully informed.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR